In the United States District Court
For the Western District of Michigan

**FILED - GR**
July 10, 2015 11:30 AM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mkc   SCANNED BY

ROBERT LEE BOLES, JR., #156632

(Enter above the full names of all plaintiffs, including prisoner number, in this action.)

v.

**1:15-cv-721**
Paul L Maloney - Chief U.S. District Judge
Ellen S. Carmody - U.S. Magistrate Judge

ARAMARK CORRECTIONAL SERVICES, LLC, KELLY MURPHY,
UNKNOWN D. McCONKEY, T ERRY MILLER, JUSTIN PHELPHS,
PHILLIP MELTON, FRANK HAND, TONYA LAMP, DONNA
FINLEY, AND ASHLEY WATTS, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

(Enter above the full name of the defendant or defendants in this action.)

## COMPLAINT

I.  **Previous Lawsuits**

**CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the required $350 filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $350 filing fee regardless whether your complaint is dismissed.**

A.  Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?   Yes ☒ No ☐

B.  If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

   1.  Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.
   See attached Complaint page 5&6 Previous Lawsuits by Plaintiff

   2.  Is the action still pending?   Yes ☐  No ☒

      a.  If your answer was no, state precisely how the action was resolved:  See page 5&6 of

      attached complaint under Previous Lawsuits by Plaintiff

   3.  Did you appeal the decision?  Yes ☐  No ☒

   4.  Is the appeal still pending?    Yes ☐  No ☒

      a.  If not pending, what was the decision on appeal? See page 5&6 of attached
            complaint under Previous Lawsuits by Plaintiff

   5.  Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit?  Yes ☐  No ☒

      If so, explain: _____

II.  **Place of Present Confinement**    Lakeland Correctional Facility

   If the place of present confinement is not the place you were confined when occurrence that is subject of instant lawsuit arose, also list the place you were confined: _____

-1-

III.    **Parties**

A.    Plaintiff(s)

Place your name in the first blank and your present address in the second blank. **Provide the same** information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff    ROBERT LEE BOLES, JR.

Address    ‡‡    141 First Street, Coldwater, MI 49036

B.    Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. If there are more than four defendants, provide the same information for each additional defendant. Attach extra sheets as necessary.

Name of Defendant #1    ARAMARK CORRECTIONAL SERVICES, LLC, et al.

Position or Title    See attached complaint pages 2 through 5 under Parties

Place of Employment    for all the parties, positions and addresses.

Address

Official and/or personal capacity?

Name of Defendant #2

Position or Title

Place of Employment

Address

Official and/or personal capacity?

Name of Defendant #3

Position or Title

Place of Employment

Address

Official and/or personal capacity?

Name of Defendant #4

Position or Title

Place of Employment

Address

Official and/or personal capacity?

Name of Defendant #5

Position or Title

Place of Employment

Address

Official and/or personal capacity?

IV. **Statement of Claim**

State here, as briefly as possible, the facts of your case. Describe how each defendant is personally involved. Include also, the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

See attached Complaint paragraphs 21 through 134.

(Last Revised: November 2011)

V.    **Relief**

State briefly and precisely what you want the court to do for you.

See attached complaiant paragraph page 31.

_____

_____

_____

_____

_____

_____

_____

7/7/15
Date

Robort Boles
Signature of Plaintiff

## NOTICE TO PLAINTIFF(S)

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

(Revised: November 2012)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE BOLES, JR.,

      Plaintiff,

vs.

                                  Case No.

                                  Honorable:

ARAMARK CORRECTIONAL SERVICES,
LLC, KELLY MURPHY, UNKNOWN D.           JURY TRIAL DEMANDED
McCONKEY, TERRY MILLER,JUSTIN
PHELPS, PHILLIP MELTON, FRANK
HAND, TONYA LAMP, DONNA FINLEY,
AND ASHLEY WATTS, IN THEIR OFFIC-
IAL AND INDIVIDUAL CAPACITIES,

      Defendants.

_____/

## COMPLAINT

NOW COMES ROBERT LEE BOLES, JR., the Plaintiff, in Pro se,
pursuant to the provisions of Title 42 U.S.C. §1983, the Prison Li-
tigation Reform Act of 1996, and the Eighth Amendment of the United
States Constitution, hereby submit his verified complaint upon in-
formation and belief, and at all times hereinafter mentioned,
alleges constitutional violations against all of the named Defen-
dants. Plaintiff's complaint states as follows:

## PARTIES

1.    Plaintiff, Robert Lee Boles, Jr., at all times relevant was a prisoner at Lakeland Correctional Facility(hereinafter referred to as "LCF"), located at 141 First Street, Coldwater, Michigan 49036.  Plaintiff is a resident of the State of Michigan.

2.    Defendant Aramark Correctional Services(hereinafter referred to as "Aramark"), was at all times relevant contracted with the State of Michigan to provide Comprehensive Food Services for Prisoners of the Michigan Department of Corrections(hereinafter referred to as "MDOC").  This private entity located at 1101 Market Street, Philadelphia, PA  19107 agreed to its contract with the State of Michigan on October 1, 2013 to begin, without interruption, on December 8, 2013 to September 30, 2016, to perform a traditional state function.  It is being sued in its official and individual capacities.

3.    Defendant Kelly Murphy was the Food Service Director for Aramark at LCF, located at 141 First Street, Coldwater, Michigan, between the period of December 2013 to February 1, 2014.  He was responsible in making sure his staff followed the standards for prisoner meals relating to therapeutic meal preparation and service, for ordering appropriate food for therapeutic diet menus, and the overall operation of food service at LCF.  He is being sued in his official and individual capacities.

-2-

4. Defendant Unknown D. McConkey was the Food Service Director for Aramark at LCF, located at 141 First Street, Coldwater, Michigan, between the period of February 6, 2014 to March 2014. She was responsible in making sure her staff followed the standards for prisoner meals relating to therapeutic meal preparation and service, for ordering appropriate food for therapeutic diet menus, and the overall operation of food service at LCF. She is being sued in her official and individual capacities.

5. Defendant Terry Miller was the Food Service Director for Aramark at LCF, located at 141 First Street, Coldwater, Michigan, between the period of April 2014 to July 18, 2014. She was responsible in making sure her staff followed the standards for prisoner meals relating to therapeutic meal preparation and service, for ordering appropriate food for therapeutic diet menus, and the overall operation of food service at LCF. She is being sued in her official and individual capacities.

6. Defendant Justin Phelps was the Food Service Director for Aramark at LCF, located at 141 First Street, Coldwater, Michigan, between the period of July 31, 2014 to March 2015. He was responsible in making sure his staff followed the standards for prisoners meals relating to therapeutic meal preparation and service, for ordering appropriate food for therapeutic diet menus, and the overall operation of food service at LCF. He is being sued in his official and individual capacities.

-3-

7. Defendant Phillip Melton was the Food Service Director for Aramark at LCF, located at 141 First Street, Coldwater, Michigan, between the period of March 2015 to June 1, 2015. He was responsible in making sure his staff followed the standards for prisoners meals relating to therapeutic meal preparation and service, for ordering appropriate food for therapeutic diet menus, and the overall operation of food service at LCF. He is being sued in his official and individual capacities.

8. Defendant Frank Hand was at all times relevant the Lead Line Food Service Supervisor for Aramark at LCF, located at 141 First Street, Coldwater, Michigan 49036. He is being sued in his official and individual capacities.

9. Defendant Donna Finley was at all times relevant a Line Food Service Worker for Aramark at LCF, located at 141 First Street, Coldwater, Michigan 49036. She is being sued in her official and individual capacities.

10. Defendant Tonya Lamp was at all times relevant a Line Food Service Worker for Aramark at LCF, located at 141 First Street, Coldwater, Michigan 49036. She is being sued in her official and individual capacities.

11. Defendant Ashley Watts was at all times relevant a Line Food Service Worker for Aramark at LCF, located at 141 First Street, Coldwater, Michigan 49036. She is being sued in her official and individual capacities.

-4-

12. At all times relevant to the events described herein, all the Defendants have acted under color of state law.

13. Plaintiff will be responsible for serving all of the above-mentioned Defendants since he has paid the full cost of filing fee($400.00), upon the filing of this Complaint. The prisoners at LCF were informed at the Warden Forum that the name and address of Aramark's registered agent is its Philadelphia address.

14. Since Aramark is registered with the State of Michigan Secretary of State, with a possible registered agent for service of process in Michigan, Plaintiff has no way of obtaining the registered agent for service of process in Michigan, and he ask this Court to furnish the information to him, in it exist, so there will not be any delay in serving the Defendants once the complaint is processed by the Court.

## JURISDICTION

15. This Court has jurisdiction over this case pursuant to 42 U.S.C. §§1331 and 1334, as well as Title 42 U.S.C. §1983. This Court is vested with subject matter and personal jurisdiction.

This cause of action arose in the Western District of Michigan. Therefore, venue is proper under 28 U.S.C. §1391(B).

## PREVIOUS LAWSUITS BY PLAINTIFF

16. Robert Lee Boles, Jr. v Darnell Jackson, Case No. 14-cv-14074, filed in the United States District Court, Eastern District of Michigan, before Judge Robert H. Cleland. The case was dismissed on June 30, 2015.

-5-

17. Robert Lee Boles, Jr. v Marcia Sorensen, Case No. 2:11-cv-10892, filed in the United States District Court, Eastern District of Michigan, before Judge Arthur J. Tarnow. A settlement agreement was reached July 2014.

18. Robert Lee Boles, Jr. v Gary Lewis, et al., Case No. 1:07-cv-277, filed in the United States District Court, Western District of Michigan, before Judge Paul L. Maloney. A settlement agreement was reached on October 6, 2010.

19. Robert Lee Boles, Jr. v Ellen Campbell, et al., Case No. 03-cv-72073, filed in the United States District Court, Eastern District of Michigan, before Judge Bernard A. Friedman. Defendants' motion for summary judgment was granted, Plaintiff filed an appeal, and the district court's decision was affirmed in Case No. 98-1359.

20. Robert Lee Boles, Jr. v William Schnarrs, et al., Case No. 87-cv-74666, filed in the United States District Court, Eastern District of Michigan, before Judge Barbara K. Hackett. The district court granted the Defendants' Motion for Summary Judgment. An Appeal was taken by the Plaintiff, and the Sixth Circuit Court of Appeals vacated the judgment and opinion. On remand, a settlement agreement was reached on February 5, 1992.

-6-

## FACTUAL ALLEGATIONS

21.   From the period of 2001 to the present, Plaintiff's medical provider has prescribed to him a 2 gm low sodium diet detail.

22.   Plaintiff's diet detail requires a therapeutic diet tray that's independent of the meals prepared for general population prisoners based on individualized diet menus written by the Bureau of Health Services(hereinafter referred to as "BHCS").

23.   The Michigan Department of Corrections(hereinafter referred to as "MDOC") diet manual is written by the BHCS.   The manual outlines what food is allowed and what food to avoid by food service personnel when preparing medical diet meals.

24.   Prior to December 8, 2013, the Food Service Department was ranned by state workers,  and Plaintiff's therapeutic diet was prepared and served according to the therapeutic diet menus.

25.   During the first week on the job at LCF Aramark employees served the Plaintiff appropriate food items for 2 gm low sodium diet,  however,  when they start running out of the diet food purchased by the state employees all the problems begin.

26.   During the third week of January 2014, Plaintiff communicated with Mr. K. Murphy, Aramark's Food Service Director at LCF about his employees failure to serve appropriate food items on low sodium diet trays.

27.   Specifically, where salt free cheese, turkey and unbreaded fish was no longer available, Plaintiff ask Mr. Murphy how long it would be for the i      to become available.

-7-

28. Mr. Murphy did not have no idea when the products would be coming in. He informed Plaintiff that he was having problems getting the items because they were not on the Aramark allowable item order list.

29. Plaintiff informed Mr. Murphy that his staff have been serving him food off the regular line that had alot of tomatoes, ketchup, peppers, spices, rich sauces and grease in it.

30. On another occasion Mr. Murphy informed Plaintiff that Aramark personnel over him wasn't approving his orders for diet products.

31. Mr. Murphy soon thereafter resigned from his position as Food Service Director for Aramark at LCF, and in February 2014, D. McConkey took his place.

32. A few days after D. McConkey arrived at LCF, Plaintiff got a chance to talk to her about the ongoing problem of Aramark's staff continuing to place inappropriate food items from the regular line on his low sodium diet tray.

33. Plaintiff express to D. McConkey that he had been diagnois by the doctor with reflux esophagitis and gastroesophageal reflux disease over one year ago, that it was under control but he feared his health was at risk due to the inappropriate items described in paragraph 29 being placed on low sodium diet tray as substitutes for the unbreaded fish, salt free turkey and cheese and sometimes just for the basic meal.

34. D. McConkey told the Plaintiff that she would get with her

-8-
-
-

supervisors to try to find out the reason for the delay in diet orders arriving, and she said that she would talk to her staff about the inappropriate food items being placed on Plaintiff's diet tray.

35. D. McConkey resigned from her position as Food Service Director for Aramark at LCF soon thereafter.

36. Terry Miller arrived at LCF as the Food Service Director for Aramark March 2014.

37. Plaintiff saw T. Miller in food service and got a chance to talk to her about the ongoing problem with Aramark personnel continuing to place inappropriate food items from the regular line on his low sodium diet tray.

38. Specifically, Plaintiff told T. Miller that the food was filtered with alot of tomatoes, ketchup, peppers, spicy flavors, rich sauces, and the meat was very greases.

39. Plaintiff told T. Miller that the low sodium diet does not allow the items mentioned in paragraph 38, and the fact that he have been diagnois with acid reflux it pose a risk to his health.

40. T. Miller informed the Plaintiff that she would look into why it was taking so long for the low sodium cheese, turkey and unbreaded fish to be ordered. She further informed the Plaintiff that she would instruct her staff to not use items off the regular food line as substitute for diet items.

41. During the last week of March 2014 Aramark ordered from the store low sodium turkey and unbreaded fish but within one month it was gone, and Aramark started substituting those items with food off

-9-

the regular line again.

42.    Early May 2014, T. Miller left her position as Food Service Director at LCF.

43.    R. Copeland came to LCF as the interim Director of Food Service for Aramark until July 2014 when Justin Phelps took over as the Director.

44.    As a result of the ongoing problem of Aramark employees placing food items into Plaintiff's diet tray from January 2014 to April 2014, and no appropriate action being taken by the numerous food service directors when the problem was brought to their attention, as described in paragraphs 21 through 42, Plaintiff suffered from episodes of acid reflux, belching, acid in throat that caused difficulty in breathing, sore throat, unstoppable hiccouphs, inability to sleep for days, and finally being sent to local hospital for treatment.

45.    One example of this fact is that during the period of January 2014 to March 2014, when spaghetti, sloppy joe, meatballs, pizza, hamburger cabbage cassrolse, and salbery meat was served, these items was filled with tomatoes, ketchup, peppers, and rich sauces that came off of the regular line.

46.    Another example of this fact is that during the period of January 2014 to March 2014, the green beans, and collard greens had hot peppers in them.

47.    Another example of this fact is that the poultry stew and noodle meals were full of tomatoes and peppers from January 2014 to March 2014.

-10-

48. As a result of the facts as alleged in paragraphs 44 through 47, Plaintiff had hiccoughs from March 28, 2014 to March 31, 2014, causing him to not beable to sleep, experienced anxiety, distress, difficulty in breathing, and being sent to health service around 4:51 PM, on March 31, 2014.

49. Plaintiff saw jennifer J. Meyer, RN. She in turn contacted medical provider Margaret Ouellete PA, by phone, and told her what the problem was.

50. Ouellette instructed Ms. Meyer that a medical order would be issued for flexeril 10 mg PO, TID for 5 days and a detail to go to medline to pick up medicine daily.

51. When Plaintiff returned to the unit he continued to experience belching, food trying to come up, anxiety, hiccoups, and difficulty in breathing; plaintiff had to return to health service around 9:28 PM, and he saw Ms. Meyer again.

52. Plaintiff temperature was 101.3, and he had a fever. Ms. Meyer informed Plaintiff that his lungs was bil with rales. She notified Ouellette again. The nurse was instructed to give Plaintiff 2 PO tylenol 325 mg. 2-25 mg Atenolol, and to give Plaintiff an other flexeril 10 mg at 2300(11:00 PM).

53. Plaintiff returned to the unit and went back to health service to take the medicine. Plaintiff informed the nurse that he wasn't feeling any better, that he was still belching and was unable to sleep.

54. Plaintiff was returned back to the unit and told to notify health service if it get any worser.

-11-

55. On April 1, 2014, at around 2:39 AM, housing unit staff contacted health service, and informed them that Plaintiff condition had gotten worser where he was having episodes of trouble breathing.

56. Plaintiff returned to health service and saw Ardith Kirzan, RN. Plaintiff told her that the medicine he received at 11:59 made him sleepy, but when he laid down, even with his head propped upon a pillow, the belching and hiccoughs caused difficulty in breathing, and he had to get out of bed and sat in a chair. Plaintiff told the nurse that he was exhausted and had not slept in three days.

57. Nurse Kirzen made a call to Ouellette and informed her of Plaintiff's condition. Ouellette instructed the nurse to give Plaintiff IM Rocephin. Plaintiff was observed for around ten minutes and returned to unit with a one day lay in restructed from all activities.

58. On April 1, 2014, at around 12:27 PM, Plaintiff was called to health service for evaluation of hiccoughs by Ouellette. Plaintiff was positive for chills, night sweat, cough, dyspnea and acid reflux. Ouellette determined that flexeril did not give relief from the hiccough. She received approval from the RMO for Baclofen, and informed Plaintiff to contact health service if the hiccoughs get worser.

59. On April 3, 2014, at about 6:45 AM, Plaintiff returned to health service. He saw Deanna K. Earl, RN. Plaintiff told the nurse that he have had hiccoughs since 5:30 PM, and that it begin after he ate the evening meal.

-12-

60.    Plaintiff told nurse Earl that he wasn't able to sleep all night, he experienced difficulty in breathing, belching and his throat and abdominal was very sore.

61.    Plaintiff saw Ouellette at about 7:09 AM.    She issued medical orders laying Plaintiff in from work and any other activities from April 3, 2014 to April 8, 2014.

62.    Plaintiff's condition got worser, and he was taken to health service at around 12:40 AM.    Plaintiff saw Randy Lindstrom, RN. He evaluated the Plaintiff and called the outside medical provider.    Lindstrom received orders to send the Plaintiff out to Community Health Center emergency room for treatment.

63.    Plaintiff received treatment for  his conditions, and was returned to LCF at about 4:34 AM.

64.    On May 7, 2014, Plaintiff filed administrative grievance identifier number LCF-2014-05-0572-09E against Aramark.

65.    In the section that ask what attempt did you make to resolve this issue prior to the writing of grievance, it is stated: "There has been ongoing problems with Aramark. In December 2013, I talked to Murphy, in February 2014, I talked to D. McConkey about them not having low sodium fish and salt free turkey, as well as there failure to give me the food required in accordance with menus. In March 2014, they started serving the fish and turkey that is required, however, they continue to serve inappropriate food for low sodium.    That the diet trays are unsantitized to eat out of, and the serviing of bread is always unfresh.    On May 4,5, and 6, 2014, the

-13-

diet trays were dirty, I said something to Coffrin, and she told me to file a grievance. Food is being prepared with grease and sauces that is staining the tray."

66. In the grievance statement, it is stated: "Authority: PD 04.07.101, Therapeutic Diet Services and Eighth Amendment. This has been an ongoing problem with Aramark since they arrived in December 2013. For months I did not receive low sodium fish and turkey, and they finally got it in March 2014. The meals are being prepared with items that don't suppose to be included in low sodium diet. The food is very greases and prepared with hot peppers and rich sauces. The past week the diet trays been dirty from stains in the trays that want come out and food stuff from previous meals. It was agreed at the Warden's Forum prior to Aramark coming here that diet trays will be thrown alway when they get in the condition they are presently in, but when bringing this to staff's attention they look at me without a response as if there is nothing they can do about it. I've brought to their attention about the pepper, rich sauces and meat products being very greases, and they look at me like they can't do anything about it. This past week I was told by staff Coffin, I showed her the tray my food was in, to file a grievance on May 6, 2014. I have experienced acid reflux that caused me to go to the hospital as a result of the items they are putting in my diet menus when it's inappropriate. A look at the therapeutic diet policy and the diet manual for low sodium is being violated as well as the Eighth Amendment where I'm being forced to eat food from dirty trays every day. Recommended solution: That Aramark take on their

-14-

responsibility and correct these ongoing problems.

67.    The Respondent failed to respond to the grievance within the time allowed by grievance coordinator so Plaintiff made a request for Step II grievance appeal.

68.    On June 8, 2014, Plaintiff filed Step II grievance appeal, stating the following: "The step one grievance wasn't responded to by Aramark staff within the time permitted by policy. They continue to disregard my pleas to correct their errors, and to place appropriate foods in my low sodium prescribed diet tray.  The MDOC monitors of this company is obviously just monitoring the general population menus.    A review of low sodium diet manual clearly support that Aramark is in violation of policy.    I talked to dietitian Rogers about this problem acouple weeks ago, we looked at her diet manual which supported my claim against Aramark that they are placing inappropriate items in my low sodium diet tray.  Aramark are in breach of its contract where they are disregarding therapeutic diet policy. This grievance was placed in the mailbox to T. Stepp on 6/8/14."

69.    On June 5, 2014, Plaintiff filed a second grievance, and he was given identifier number LCF-2014-06-0682-09D.    In the section that ask what attempt did you make to resolve this issue prior to the writing of grievance, it is stated: "On June 1, 2014, I talked to food service personnel Hand about improper food being placed in my low sodium diet trays for the past two weeks. He assured me that it would be corrected after I showed him contract No. 07184300009 at

-15-

page 164-171, that clearly indicated no tomatoes or ketchup, etc., shall be included in low sodium therapeutic diets. On June 3,4,5, 2014, these items continued to be placed in my food. I showed Finley my spaghetti during the noon meal full of tomatoes and kitchup which she told me to file a grievance."

70. In the grievance statement it states: "Authority: PD 04.07.101, Therapeutic Diet Services, Breach of Contract, and the Eighth Amendment. Aramark Correctional Services and all of its employees are in breach of contract where they continue to prepare low sodium diet in violation of MDOC's Diet Manual. The contract outlines what foods are to be avoided when preparing diet menus. I brought this to the attention of Watts, Corrigan, Finley, Lamp, and Hand between May 12, 2014 to date 6-5-14, and no action been taken. On June 1, 2014, when ignored by Lamp, Corrigan and Finley, Mr. Hand talked to me, and told me to go back to the unit to get paperwork. I got my copy of the contract and showed it to Hand. It showed what foods to avoid when preparing low sodium meals which tomatoes and ketchup was on it. He asked me for a copy of the diet manual relating to low sodium diet and mentioned that he was going to show it to acting supervisor Copeland the following morning. I let him run off a copy. Hand further told me that items indicated in the manual will no longer be included when preparing diet tray, however, on June 3, kitchup and tomatoes was in the sloopy joe. On June 4, the grill cheese was prepared with american cheese, not salt free cheese, and on June 5, 2014, the spaghetti was full of ketchup and tomatoes. As a result of these meals being full of salt I've experienced headaches, and dizziness. Also, belching and food

-16-

coming up due to acid reflux, and I constantly worried about being taken back to the hospital due to an episode of nonstop hiccups. I've not eatten sometimes but I have to other times to not starve."

71. T. Stepp, Greivance Coordinator at LCF gave June 30, 2014, as the due date to respond to the greivance outlined in paragraphs 69 and 70.

72. On June 16, 2014, Defendant Hand responded to both greivances.

73. Regarding grievance identifier LCF-2014-05-0572-09E Defendant Hand states, "Spaghetti and pasta meals need to avoid tomatoes."

74. Regarding greivance identifier LCF-2014-06-0682-09D Defendant Hand states, "I spoke with Mr. Boles we discussed the items to avoid in the diet manual. No diet or therapeutic menu should come off the mainline. Diet and therapeutic diets should be prepared by diet cooks only. Mr. Boles stated that other Aramark supervisors say there is nothing they can do about it."

75. On June 20, 2014, the step II Respondent in greivance identifier LCF-2014-05-0572-09e state that the step I response was supported at step II.

76. On June 25, 2014, Plaintiff filed a step III appeal, stating, "Step I response did not occur within the due date. A step II appeal was requested, I received it on June 8, 2014, and filed it. On June 16, 2014, Mr. Hand interviewed me, and I showed him the low sodium diet manual that shows tomatoes are not to be included in

-17-

low sodium therapeutic diet. Mr. Hand agreed and stated in his response that "spaghetti and paste meals need to avoid tomatoes." The second step response appears to disregard Mr. Hand's step I response and the contents of my step I grievance. I grieved that Aramark was preparing low sodium diet trays with items contrary to PD o4.07.101. The warden disregarded the issue, and state that I don't have an acid-reflux diet. Mr. Hand admitted that tomatoes are to be avoided, policy states they are, and Aramark should be found to have violated policy and their contract. Sent 6/25/14."

77. On September 30, 2014, the Step III Respondent stated, "The response you received at Step I and II reflect that your issues were in fact considered and appropriately responded to at the facility level. The grievance identifier has added the capital "A" at the end of the grievance, indicating an Aramark concern."

78. On July 11, 2014, the Step II Respondent in grievance identifier LCF-2014-06-0628-09d stated, "The Step I response is supported at Step II. Copy of the issue will be sent to Aramark FS Director for review."

79. On July 21, 2014, Plaintiff filed a Step III appeal stating, "It is not clear whether or not the Step II response is directing Aramark to discontinue the violation of therapeutic diet, therefore, this Step III appeal is filed for appropriate action. They continue to place high concentrations of tomatoe products in my food and the hamburger cabbage casserole given out this week came directly off the regular line. Greivance sent out July 21, 2014" On September 30, 2014, the Step III Respondent denied the grievance on the merits.

-18-

80.   Plaintiff went through all three steps of the grievance procedure on both grievances, and the issues raised against the Defendants was addressed on the merits.

81.   After the june 16, 2014 interview on greivances with Defendant Hand, during the evening meal sloppy joe was on the menu, and it had alot of tomatoes and ketchup in the meal.

82.   Plaintiff took his tray back up to the serving line, and showed it to Aramark line worker Tonya Lamp.  Plaintiff told her that earlier that day Hand had agreed not to place tomatoes in spaghetti and pasta meals.  Lamp informed the Plaintiff that Hand had instructed her to substitute the spaghetti, sloopy joe and pasta meals.  She gave the Plaintiff peanut butter and jelly as a substitute.

83.   On June 18, 2014, during the lunch and dinner meal Plaintiff's received approprate substitutes.

84.   On June 19, 2014, during the lunch meal pizza was on the menu.   Aramark gave Plaintiff pizza with regular cheese, red peppers and tomatoes all over it.

85.   Plaintiff took the tray back to the serving line and showed it to food line worker Lamp.

86.   Plaintiff informed Lamp that he could not eat the meal without getting sick.   Lamp told the Plaintiff that Hand instructed her that he had to eat what's on the diet tray.

-19-

87. Plaintiff asked Lamp to be allowed to speak with Hand, she went to the back and got him.

88. When Hand came out from the back to the serving line Plaintiff ask him why was he doing this when it had been agreed on June 16, 2014 that tomatoes would be avoided.

89. Plaintiff told Hand that he wasn't going to eat the pizza, and he requested a substitute. Hand refused to give the Plaintiff a substitute so he threw away the meal and left out of food service.

90. On June 19, 2014, when Plantiff received his diet tray the meal was spaghetti. The tray was full of tomatoes, red peppers, ketchup and was the same meal prepared on the regular line.

91. Plaintiff took the tray back to the serving line, and showed it to food line workers Lamp and Finley. When Plaintiff attempted to express himself, he was cut off by Lamp and she said that they didn't want to discuss the matter.

92. Finley told the Plaintiff that Hand told them that Plaintiff have to eat what they give him.

93. Plaintiff threw the tray away and left the chow hall.

94. On June 20, 2014, during the lunch meal hamburger cabbage casserole was being served. This meal was prepared by the general population cooks full of red peppers, tomatoes, cabbage and very little meat in it.

95. Plaintiff got his tray and took it back to the serving line. Plaintiff ask for a substitute and Lamp told him that he

have to eat what is given to him, and there will not be any substitute. Plaintiff threw the tray away and left food service.

96. On June 20, 2014, while at a doctor's appointment with Dr. Davis, Plaintiff complained to him about food service personnel not following the low sodium diet protocol, and that they were trying to force him to eat food he cannot eat. Plaintiff asked the doctor to intervene, the doctor told the Plaintiff to file a greivance, and Plaintiff told the doctor that greivances had already been filed.

97. On July 26, 2014, while at another doctor's appointment with Dr. Davis the doctor notice that Plaintiff had losted eight pounds. He asked Plaintiff about the weight lost, and Plaintiff informed him that Aramark employees was not placing appropriate items on his diet tray and he was not eatting because he did not want to get sick and go to the hospital again.

98. On October 10, 2014, Plaintiff sent a health care kite to dietitian Rogers stating, "Dietitian Rogers Aramark food service continues to place high quantities of tomatoes in the 2 gm low sodium diet trays. I discussed this with you in May 2014, and you informed me that you would discuss this with them. I've missed alot of meals to avoid the tomatoe products, and have losted about nine pounds."

99. Randy Lindstrom, RN responded to the kite indicating the kite was forward to the dietitian.

100. On October 15, 2014, Rogers responded to the kite indicating to the Plaintiff that he will be placed on callout so she

-21-

can evaluate the problem.

101. On November 7, 2014, Plaintiff sent Mrs. Rogers an other
kite. He informed Mrs. Rogers that the lunch meal suppose to
have been hamburger cabbage casserole, but Aramark placed on low
sodium diet trays tomatoe paste casserole. Plaintiff informed
Mrs. Rogers that he could not eat the food without getting sick,
and ask her to intervene.

102. On November 8, 2014, Mrs. Rogers responded to
Plaintiff's kite, stating, "We have monitors from the state that
are in charge of monitoring problems if they are incorrect and
changing them. This is not the dietitian job.Sorry."

103. Plaintiff sent Mrs. Rogers another health care kite
informing her that Aramark refuse to honor low sodium diet when
placing very high contents of tomatoes and sauces in low sodium
diet, and substitut ing diet menu items with food off the regular
line. Plaintiff ask Mrs. Rogers to modify his low sodium diet to
add reflux

104. On November 20, 2014, Plaintiff was called to Mrs.
Rogers office to discuss the ongoing problem he was having with
Aramark. He told Mrs. Rogers that Aramark continues to place
alot of tomatoe products in his 2 gm low sodium diet tray, he do
not want to suffer uncontrollable hiccoughs, not getting sleep,
experiencing difficulty breathing and he would appreciate her
modifying his diet to include reflux.

-22-

105. Mrs. Rogers informed the Plaintiff that in light of the fact that Armark don't suppose to be placing tomatoe products and hot spices in the 2 gm low sodium diet trays she would modify the diet to include reflux.

106. When Plaintiff went to the chow hall to get his evening meal the diet had been modified. Plaintiff received his tray but he did not have any bread on it. Plaintiff went back to the serving line and ask food service line worker Watts for bread, and she refused.

107. On November 20, 2014, Plaintiff filed administrative grievance identifier LCF-2014-11-1278-17b against Watts. In the section that ask what attempt did you make to resolve this issue prior to the writing of grievance, it states, "I went to the line and discussed with Aramark employee Watts the matter of no bread being placed on my diet tray to eat with hambuger. She told me that it wasn't on the menu and I wasn't going to get anything."

108. In the grievance statement it states, "Authority: PD 03.03.130, "Humane Treatment & Living Condition for Prisoners," 1st Amendment and 14th Amendment. Several greivances was filed against Aramark employees for not following low sodium diet, including Watts. On 11/20/14, I had a consultation with the dietitian Rogers. She modified my low sodium diet to add reflux so no more tomatoe products would be included in my diet tray, although the low sodium diet did not permit those products. When I went to the evening meal I received 3 oz of hamburger and

-23-

bread wasn't checked off. Prisoners who been getting hamburgers for this menu during the past 11 months the bread item wasn't checked off, yet they were given bread to go with hamburger. One of the prisoenrs at the table I was eatting at had hamburger and his menu did not include bread but Aramark gave him bread. I approached several prisoners who had hamburger on their menu and they all received a bun. I preceeded to the line and asked Watts could I get a bun to go with my hamburger. She told me that you been complaining about us since we been here, and since your menu does not include bread item I'm not going to give you any." I informed her that all the prisoners who received hamburgers on their tray and bread wasn't included but they gave them a bun. I asked her why was I signled[sic] out and she told me that all she was concern with was my menu. Where grievances was filed against Watts, her actions on 11/20/14 was in retaliation because there is no other bases for her to single me out to deny me a peace of bread when she allowed all the other prisoners who did not have bread on their menu to receive same. Her actions clearly violates the class of one theory under the 14th amendment where prisoners like me(menu hamburger) had been receiving bread in their tray since Aramark came to the facility, even though, it's not marked off as an item. I do not wish to be interviewed by Aramark, and a response in writing will be appropriate."

109.    On December 16, 2014, in step I greivance reponse

-24-

the respondent Frank Hand states, "Every inmate during a hamburger or hot dog meal is entitled to a bun or bread with there sandwich.  Mr. Boles was only trying to get what was rightfully his.  Mr. Boles has been patient with us during the time of transition & his personal diet has not been right since we have taken over. Mrs. Watts needs to be tal ked to about her interaction with Mr. Boles."

110.  Plaintiff signed off on grievance identifier LCF-2014-11-1278-17b as being resolved at the administrative level.

111.  From the period of July 2014 to March 2015, Justin Phelps was the Food Service Director of Aramark at LCF.

112.  On August 22, 2014, the Warden's Forum through the Food Service Committee raised the following issues with Mr. Phelps: 1) why prisoners on the diet line are being served there meals in food stained diet trays?  Mr. Phelps indicate that the trays will be replaced soon; and 2) why prisoners on the diet line are being served there meals in dirty diet trays? Mr. Phelps gave the same answer, they will be replaced soon.

113.  On October 15, 2014, the Warden's Forum th rough the Food Service Committe raised again the question about the dirty and stained trays.  Mr. Phelp informed them that the prisoners working in food service will clean them.

114.  From the period of May 7, 2014, when Plaintiff raised the issue in greivance identifier LCF-2014-05-0572-09E about the diet trays being dirty, and being forced to eat meals in stained

trays this has continued and it have got worser where the trays still have not been replaced.

115. In March 2015, Phelps left LCF as Food Service Director and went to another facility which P. Melton came in to take his place.

116. Plaintiff talked to P. Melton about the ongoing problem with Aramark ordering appropriate items for low sodium diet, and the fact that salt free turkey and cheese had not been available for over six months.

117. On the scheduled days for salt free turkey and cheese Aramark has been substituting the items with food off the regular line.

118. Mr. Melton informed the Plaintiff that the low sodium cheese and turkey been ordered sometime ago but it have not come in.

119. On May 27, 2015, the Warden's Forum through Health Care Committee helded a meeting with the Health Unit Manager(HUM)) Betsy Spreeman. The Committee raised several issues relating to low sodium diets, and Aramark's failure to serve the meals in compliance with prescribed diet order.

120. Issue #2 raised the following: "Prisoners who were pre-scribed specific 2 gram low sodium diets are not being served meals in complaince with said order. Food service is serving low sodium items that do not meet the 2 gram requirement. They are under the impression that because the packaging that the

-26-

item comes in says low sodium it meets the requirements of the diet regardless of the sodium level. One example of this is they are serving them beef noodle casserole from the general population serving line, the roast beef in that meal is low sodium but the sodium level is nowhere near the 2 gram requirement of their specific diet. The reason given by Food Service is that the meal slip provided to them by the Dietician for the beef noodle casserole meal does not specify 2 gram low sodium or even low sodium, this is definitely a typographical error because all of these prisoners other meals specify 2 gram low sodium. Now that Health Service is aware of this situation the population requests clarification and correction of this error with both the Dietician and the Food Service Director."

121. The reponse to issue #2: "HUM Spreeman has forwarded these concerns to the Lead Dietician and has also requested a kitchen audit. HUM Spreeman will follow-up and report findings when available. After the meeting today, HUM Spreeman along with Inspector Morrison went to the main chow hall and talked with Food Service Manager Mr. Melton. It was discovered by HUM Spreeman that the items(low sodium cheese, no sodium turkey and other items needed for 2 gm low sodium diet and renal diets) in questioin **were not previously on the allowable item order list. Mr. Melton filed the appropriate paperwork to have these items added to the approved list. These items were added, ordered by Mr. Melton and should have been delivered today 5/27/15. How-**

-27-

ever, when the shipment arrived these items were not delivered, in which Mr. Melton immediately contacted his supervisor and made arrangements for him to go and pick up the needed items directly from the store.    Inspector Morrison asked that Mr. Melton contact HUM Spreeman once the items in questioin were on site. Mr. Melton agreed. HUM Spreeman will continue to monitor and follow up as needed."

122.   Issue #3 raised the following: The population requests that the dietician provide the required minimum service outlined in PD 04.07.101 Section (E), specifically, subsections:

>    4.   Review and approve menu substitutions to the stan-dardized therapeutic diet menus.
>    5.   Conduct audits of therapeutic diet lines and trays.
>    7.   Provide technical assistance to Food Service de-partment.

123.   The response to issue #3:  "4. Will follow up with Mr. Melton on education for appropriate substitutions. HUM Spreeman talked to Mr. Melton in regards to substitutions and he informed HUM that he is currently working on getting the appropriate items where substitutions would be used minimally; 5. This is being done, but there is not set schedule. Per Dietician Rogers, she audited the kitchen on 5/22/15 and noted undocumented substitutions used and reported it to the Lead Dietician and also the LCF contact monitors. A request for the LCF contact monitors to look further into this was requested; 7. HUM Spreeman will look into educational training material for pri-soners working in the kitchen, and also Aramark staff."

124.    On June 1, 2015, Phillip Melton, Aramark Food Service Director came to work at LCF, and he resigned.

125.    On or about June 8, 2015, Aramark personnel obtained low sodium turkey from the store, and it was placed on the June 10, 2015, dinner meal low sodium diet trays.

126.    By June 24, 2015, during the turkey stir frey meal Aramark had ran out of low sodium turkey, and they placed items off the regular line on low sodium diet trays.

## CLAIMS FOR RELIEF

127.    Plaintiff support the following claims by reference to the previous paragraphs of this complaint.

128.    The Defendants Aramark, Kelly Murphy, D.McConkey, Terry Miller, Frank Hand, Justin Phelps, Phillip Melton, Tonya Lamp, and Donna Finley was aware of Plaintiff's low sodium dietary prescription, that Plaintiff diet was inadequate in relation to his medical needs, that the Defendants assumed the obligation to provide prescribed medical diet, and there actions constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

129.    The Defendants Aramark, Kelly Murphy, D. McConkey, Terry Miller, Frank Hand, Justin Phelps, and Phillip Melton had a policy to serve Plaintiff food that made him sick, ill, and caused weight lost.  At the time Aramark was serving the inappropriate food products to Plaintiff it was aware that the product posed a substan-

-29-

tial risk of serious harm to Plaintiff's health, or that Aramark was aware of facts from which this inference could be drawn, and there is a series of events from which it can be infer the existence of a policy that resulted in a violation of Plaintiff's Eighth Amendment Constitutional rights.

130.    The Defendants Aramark, Justin Phelp and Phillip Melton failed to replace diet trays stained with food from previous meals that is unsanitary and being used by as many as 95 inmates per meal from the period of May 2014 to the present. This ongoing and repeated conduct by the Defendants infer the existence of a policy that resulted in a violation of Plaintiff's Eighth Amendment Constitutional rights.

131.    That Defendant Watts action on November 20, 2014, as outlined in paragraphs 106 through 110 was motivated by Plaintiff's greivances LCF-2014-05-0572-09E and LCF-2014-06-0682-09D, and was in retaliation , and in violation of the First Amendment of the United States Constitution.

132.    Defendant Watts actions as described in paragraphs 106 through 110 deters a person of ordinary firmness from engaging in protected conduct, and is adverse action that was taken against the Plaintiff.

133.    The chronology of events outlined in paragraphs 106 through 110 demonstrate a causal connection between the protected conduct of the Plaintiff, and the adverse action of the Defendant.

134. That Defendant Watts action on November 20, 2014, as out-
lined in paragraphs 106 through 110 violated the class of one
theory under the Fourteenth Amendment of the United States Con-
stitution.

### RELIEF

WHEREFORE, for the reasons stated, this Court should:

A. Accept jurisdiction of this case;

B. Declare that the rights of Plaintiff was violated by the
actions of the Defendants;

C. Award damages in the amount of $25,000 against each of
the Defendants for violating Plaintiff's Constitutional rights;

D. Grant actual cost for having to litigant this action,
plus all cost of court including filing fees.

E. Award any other relief that is deemed just and equitable.

Date: July __7__, 2015

Respectfully submitted,

Robert Boles, #156632
Lakeland Correctional
Facility- 141 First St
Coldwater, MI 49036

### VERIFICATION

_ I declare under the penalty of perjury that the foregoing is
true and correct.

Date: July __7__, 2015

Robert Boles