UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE BOLES, JR., #156632,

        Plaintiff,                           Hon. Paul L. Maloney

v.                                            Case No. 1:15-cv-721

ARAMARK CORRECTIONAL
SERVICES, INC., et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 87). Plaintiff initiated this action against Aramark Correctional Services, Inc. and nine (9) food service employees alleging various violations of his constitutional rights as detailed herein. Defendants now move for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action terminated.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the

non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      Exhaustion**

Defendants first argue that Plaintiff has failed to properly exhaust his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

   Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

   If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

   Defendants have submitted evidence that during the relevant time period, Plaintiff pursued three (3) grievances concerning the allegations in his complaint. Plaintiff does not dispute this assertion of argue that he submitted any other grievances regarding the allegations in his complaint. A review of these three grievances reveals the following.

    A.      Grievance LCF-14-05-0572-09eA

Plaintiff initiated this grievance on May 7, 2014, alleging that on the previous day he was served a meal on a "dirty" tray stained from grease and sauces. (ECF No. 87-3 at PageID.893). Plaintiff pursued this grievance through all three steps of the grievance process. (ECF No. 87-3 at PageID.891-93). Accordingly, this grievance properly exhausts Plaintiff's claim that on May 6, 2014, he was served food on a dirty tray.

    B.      Grievance LCF-14-06-0682-09d

Plaintiff initiated this grievance on June 5, 2014, alleging that from June 1, 2014, through June 5, 2014, he was not provided a low sodium diet. (ECF No. 87-3 at PageID.890). Specifically, Plaintiff alleged that "Aramark Correctional Services and all of its employees are in breach of contract where they continue to prepare low sodium diet in violation of MDOC's Diet Manual." (ECF No. 87-3 at PageID.890). Plaintiff alleged that he discussed the matter with several individuals including Defendants Watts, Finley, Lamp, and Hand, specifically informing them of the requirements of the relevant contract. (ECF No. 87-3 at PageID.890). Plaintiff alleged that his concerns were ignored. (ECF No. 87-3 at PageID.890). Plaintiff pursued this matter through all three steps of the grievance process. (ECF No. 87-3 at PageID.888-90). Accordingly, this grievance properly exhausts Plaintiff's claim that from June 1, 2014, through June 5, 2014, Defendants Watts, Finley, Lamp, and Hand failed to prepare low sodium meals in accordance with the MDOC Diet Manual.

C. Grievance LCF-04-11-1278-17bA

Plaintiff initiated this grievance on November 20, 2014, alleging that earlier that day Defendant Watts refused to provide him a bun with his hamburger. (ECF No. 87-3 at PageID.894). Plaintiff alleged that Watts' actions were motivated by a desire to retaliate against Plaintiff for previous grievances he had "filed against Aramark employees for not following low sodium diet." (ECF No. 87-3 at PageID.894). Plaintiff concedes that he did not pursue this grievance through all three steps of the grievance process, but argues that because the grievance was resolved at Step I he was not required to pursue the matter further.

As noted above, what constitutes proper or complete exhaustion is defined by the Supreme Court as compliance with an agency's rules and requirements. MDOC Policy specifically provides that a prisoner "*may* file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ BB (emphasis added). Likewise, MDOC Policy specifically provides that a prisoner "*may* file a Step III grievance if s/he is dissatisfied with the response received at Step II or if s/he did not receive a timely response." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ FF (emphasis added).

A plausible reading of these provisions is that a prisoner is not required to pursue a matter through all three steps of the grievance process if the matter is resolved to his satisfaction prior to Step III. Defendants have identified no MDOC Policy provision that obligates prisoners to pursue a grievance through all three steps if the matter is resolved in a manner satisfactory to the prisoner prior to Step III. Defendants have likewise failed to identify for the Court any legal authority holding that under the circumstances described herein, where a grievance is resolved to the prisoner's satisfaction at Step I and no further action taken, the prisoner has failed to properly exhaust the claim in question.

Accordingly, the Court finds that Defendants have failed to meet their burden to establish that Plaintiff failed to properly exhaust his claim that Defendant Watts retaliated against him by refusing to provide him a bun for his hamburger.

**II.        Summary Judgment**

Defendants further argue, in the alternative, that they are entitled to summary judgment on the claims Plaintiff may have properly exhausted.  As discussed below, the Court agrees.

A.      Dirty Meal Tray

Plaintiff alleges that on May 6, 2014, he was served a meal on a "dirty" tray stained from grease and sauces.  Plaintiff alleges that this violated his Eighth Amendment rights.  (ECF No. 1 at PageID.34).  The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The analysis by which Defendants' conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual.  *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  Contemporary standards of decency are violated only by "extreme deprivations" which deprive the

prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Id.* The Eighth Amendment, however, is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Simply put, serving a meal on a stained or dirty food tray does not deprive an inmate of the "minimal civilized measure of life's necessities." *See, e.g., Foster v. Shouse*, 2016 WL 6471094 at *3 (W.D. Mich., Nov. 2, 2016) ("the occasional delivery of food on dirty food trays does not meet the objective component of an Eighth Amendment claim") (collecting cases). Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

        B.      Failure to Provide Low Sodium Diet

Plaintiff alleges that Defendants Watts, Finley, Lamp, and Hand violated his Eighth Amendment rights by failing to provide him an appropriate low sodium diet. Defendants have submitted evidence that Plaintiff was prescribed, during the relevant time period, a low sodium diet. (ECF No. 87-1 at PageID.810-15). Plaintiff alleges that he experiences severe physical reactions when he is forced

to eat a non-conforming diet. The Court assumes, therefore, that Plaintiff's condition satisfies the objective prong of the analysis. Plaintiff's claim fails, however, when assessing the subjective prong.

Plaintiff has presented no evidence that Defendants Watts, Finley, Lamp, or Hand had any knowledge that he had been prescribed a low sodium diet. As discussed above, Plaintiff alleged in his grievance that Defendants were committing *breach of contract* by not complying with the MDOC's Diet Manual. Plaintiff did not allege that Defendants were informed about or otherwise possessed knowledge of his low sodium diet prescription. Moreover, an allegation of breach of contract cannot reasonably be said to put Defendants on notice that Plaintiff was experiencing a serious medical condition which required a low sodium diet. While Plaintiff submitted a verified complaint, the contents thereof do not rectify this shortcoming. With respect to this claim, Plaintiff's complaint does nothing more than incorporate the allegations in his grievance. Finally, in response to the present motion, Plaintiff has presented no evidence that Defendants Watts, Finley, Lamp, or Hand had any knowledge that he had been prescribed a low sodium diet. Simply put, Plaintiff cannot establish that Defendants Watts, Finley, Lamp, or Hand acted with a sufficiently culpable state of mind.

Plaintiff's claim also fails because Plaintiff has failed to present evidence that Defendants Watts, Finley, Lamp, or Hand engaged in any unconstitutional behavior. Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012). Plaintiff's evidence establishes nothing more than Defendants were informed that Plaintiff was not receiving a low sodium diet and the problem was not thereafter corrected. Plaintiff offers no evidence that Defendants engaged in any behavior or conduct related to this particular problem. Accordingly,

the undersigned recommends that Defendants Watts, Finley, Lamp, and Hand are entitled to summary judgment on this particular claim.

### C. Retaliation

Plaintiff alleges that Defendant Watts subjected him to unlawful retaliation by denying his request for a hamburger bun on a single occasion. Plaintiff alleges that Watts acted in retaliation for grievances Plaintiff had previously filed regarding his inability to receive a low sodium diet.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). While Plaintiff appears to have been engaged in protected conduct, his claim fails at the second and third steps of the analysis.

Plaintiff alleges he was denied a hamburger bun on a single occasion. The Court finds this to be an "inconsequential" action resulting in "nothing more than a de minimis injury" insufficient to maintain a retaliation claim. *See, e.g., Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (noting that it "trivializes the First Amendment to allow plaintiffs to bring claims for *any* adverse action, no matter how minor"). Plaintiff likewise cannot establish the requisite causal connection. Courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of

malice" are insufficient, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399. Conclusory allegations of retaliatory motive are insufficient, however, as Plaintiff must instead present evidence from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004). With respect to causation, Plaintiff offers nothing more than the unsubstantiated conclusion that Defendant acted with retaliatory motivation. Accordingly, the undersigned recommends that Defendant Watts is entitled to summary judgment as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 87), be **granted** and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  April 3, 2017  
 /s/ Ellen S. Carmody  
ELLEN S. CARMODY  
United States Magistrate Judge